From: 4073165512    Page: 3/8    Date: 10/23/2012 12:10:11 PM

6:12-mj-1487

WARRANT FOR ARREST

| United States District Court | DISTRICT |
|---|---|
| | SOUTHERN DISTRICT OF NEW YORK |
| UNITED STATES OF AMERICA | DOCKET NO.  79 MAG 9649 |
| v. | |
| LEONARD WOLF | NAME AND ADDRESS OF INDIVIDUAL TO BE ARRESTED |
| | LEONARD WOLF |
| WARRANT ISSUED ON THE BASIS OF:    ☐ Order of Court<br>☐ Indictment    ☐ Information    X Complaint | DISTRICT OF ARREST |
| TO: UNITED STATES MARSHAL OR ANY OTHER AUTHORIZED OFFICER | CITY |

YOU ARE HEREBY COMMANDED to arrest the above-named person and bring that person before the United States District Court to answer to the charge(s) listed below.

**DESCRIPTION OF CHARGES**

WIRE FRAUD

| IN VIOLATION OF | UNITED STATES CODE TITLE<br>18 | SECTION<br>1343 |
|---|---|---|
| | BAIL    OTHER CONDITIONS OF RELEASE | |
| ORDERED BY | SIGNATURE (FEDERAL JUDGE / MAGISTRATE) | DATE ORDERED<br>10-10-12 |
| CLERK OF COURT | (BY) DEPUTY CLERK | DATE ISSUED |

**RETURN**

This warrant was received and executed with the arrest of the above-named person.

| DATE RECEIVED | NAME AND TITLE OF ARRESTING OFFICER | SIGNATURE OF ARRESTING OFFICER |
|---|---|---|
| DATE EXECUTED | | |

Note: The arresting officer is directed to serve the attached copy of the charge on the defendant at the time this warrant is executed.

This fax was received by GFI FaxMaker fax server. For more information, visit: http://www.gfi.com

Approved: _____
NIKETH VELAMOOR
Assistant United States Attorney

Before:   HONORABLE RONALD L. ELLIS
          United States Magistrate Judge
          Southern District of New York          19 MAG 2649

- - - - - - - - - - - - - - - - x
                                  :   SEALED
UNITED STATES OF AMERICA              COMPLAINT
                                  :
          - v. -                      Violation of
                                  :   18 U.S.C. § 1343
LEONARD WOLF,
                                  :   COUNTY OF OFFENSE:
          Defendant.                  NEW YORK
                                  :
- - - - - - - - - - - - - - - - x

COUNTY OF NEW YORK            )
STATE OF NEW YORK             ) ss.:
SOUTHERN DISTRICT OF NEW YORK )

          ALEXANDER H. KURGANSKY, being duly sworn, deposes and says
that he is a Special Agent with the Federal Bureau of Investigation
("FBI") and charges as follows:

                         COUNT ONE
                        (Wire Fraud)

          1.   From at least in or about December 2008, up to and
including in or about February 2012, in the Southern District of New
York and elsewhere, LEONARD WOLF, the defendant, willfully and
knowingly, having devised and intending to devise a scheme and
artifice to defraud, and for obtaining money and property by means
of false and fraudulent pretenses, representations, and promises,
transmitted and caused to be transmitted by means of wire and radio
communication in interstate and foreign commerce, writings, signs,
signals, pictures, and sounds for the purpose of executing such
scheme and artifice, to wit, WOLF defrauded an individual of $10
million by falsely claiming that the money would be used for an
investment when in fact the money would be used for personal
expenses.

          (Title 18, United States Code, Sections 1343 and 2.)

                              1

The bases for my knowledge of the foregoing charges are, in part, as follows:

2.    I have been a Special Agent with the FBI for approximately 3 years.  I am currently assigned to a squad involved in investigating violations of the securities laws as well as mail and wire fraud statutes, among other crimes.  The information contained in this affidavit is based upon my personal knowledge and my review of documents and records gathered during the course of this investigation, as well as information obtained, directly or indirectly, from other sources and agents, including information provided to me by witnesses who participated in conversations with the defendant.  Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all of the facts that I have learned during the course of the investigation.  Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

3.    Based on my review of law enforcement databases, LEONARD WOLF, the defendant, is a 62 year old male who was born in New York and who resides in Florida and North Carolina.

4.    Based on my discussions with an individual ("Victim-1") who has known LEONARD WOLF, the defendant, for more than 10 years, I learned the following:

a.    WOLF told Victim-1 that he had degrees from the Massachusetts Institute of Technology ("MIT"), Harvard University and Yale University, and had served as a pilot in the United States Navy.

b.    During the summer of 2008, LEONARD WOLF, the defendant, asked Victim-1 to participate in a $50 million dollar investment.  WOLF stated that he and another individual would invest $40 million and Victim-1 would invest $10 million.  WOLF told Victim-1 that the money would be invested through a management group in Marseille, France and would be held for 18 months.  WOLF refused to identify the name of the investment fund but informed Victim-1 that WOLF had been investing in the group for 24 years and that his minimum return had been five times his initial investment.  WOLF promised Victim-1 that he would receive returns several times his initial investment and guaranteed that Victim-1 would at least get his initial investment of $10 million back.

2

This fax was received by GFI FaxMaker fax server. For more information, visit: http://www.gfi.com

        c.    Victim-1 agreed to invest the $10 million and to make the payments in installments over 9 months. There was no written agreement memorializing the investment.

        d.    WOLF instructed Victim-1 to wire the funds to an account in the name of a certain entity (the "Entity Account") and provided wire instructions by fax. WOLF described the Entity as a real estate brokerage company that he controlled with a co-conspirator not named herein ("CC-1"). WOLF told Victim-1 that the money would then be transferred to the investment group in Marseille.

        e.    Victim-1 made several payments beginning in or about August 2008. In total, Victim-1 wired $10 million to the Entity Account.

        f.    After giving WOLF the money, WOLF gave Victim-1 periodic updates on the status of the investment, which WOLF said he was receiving from the investment group in Marseille. According to these updates, the investment rose in value very quickly and, at one point, Victim-1's $10 million investment was worth $50 million.

        g.    In or about the fall of 2009, WOLF informed Victim-1 that the investments had been in currency, gold and possibly a Chinese housing project.

        h.    In or about March 2010, when the 18-month investment period was supposed to end, WOLF informed Victim-1, for the first time, that the investment group in Marseille had the right to extend the investment to 24 months. WOLF further informed Victim-1 that the money was in Korea and could not be transferred for legal reasons.

        i.    In or about January 2011, WOLF informed Victim-1 that the invested money was divided between China and Korea and that the investment managers were unable to return investor money.

        j.    Victim-1 had several meetings with WOLF regarding the investment in New York, NY.

        k.    Victim-1 has never received any portion of his initial investment, or any returns thereon, from WOLF or anyone else.

        5.    In or about February 2012, I directed Victim-1 to have a series of telephone conversations with LEONARD WOLF, the defendant, which I consensually monitored and recorded. During

these conversations, WOLF and Victim-1 discussed, among other things, the status of Victim-1's investment. For example:

    a.    On or about February 7, 2012, WOLF told Victim-1 that the investment was now worth $91 million, but that he did not know when Victim-1 would get any money.

    b.    On or about February 13, 2012, Victim-1 asked WOLF who was managing his investment and WOLF said that he was.

    c.    On or about February 15, 2012, WOLF complained that Victim-1 did not invest what Victim-1 "should have invested." WOLF further informed Victim-1 that the investment would be done within 18-24 months from January 1st of 2011.

    6.    Based on my review of bank records for the Entity Account, I know the following:

    a.    LEONARD WOLF, the defendant, and CC-1 are signatories for the Entity Account.

    b.    From in or about August 2008 until in or about May 2009, there were six wire transfers totaling $10 million from Victim-1's account to the Entity Account. The first deposit, on or about August 11, 2008, was in the amount of $1 million.

    c.    Within a week of the initial deposit of $1 million on August 11, 2008, there was a check for $225,000 drawn on the Entity Account that was issued by CC-1 and made out to WOLF. On or about August 20, 2008, WOLF purchased a cashier's check for a 2008 Lamborghini. During the period of August 11, 2008 until November 24, 2008, there were 20 checks issued to WOLF totaling approximately $500,000.

    d.    From in or about August 2008 until in or about November 2008, there were numerous checks issued by CC-1 to himself. In addition, beginning in August 2008, there were several payments from the Entity Account to make payments towards credit card accounts in the name of CC-1.

    e.    Since in or about August 2008, there have been no outgoing wires or checks from the Entity Account relating to any overseas investment. On the contrary, the funds were transferred to personal accounts or used to pay personal expenses, such as credit card payments and purchases of cars, jewelry, art, clothing, home construction and a private jet.

4

This fax was received by GFI FaxMaker fax server. For more information, visit: http://www.gfi.com

7.    Based on information received from representatives of MIT, Harvard University and Yale University, there are no records or other evidence that LEONARD WOLF, the defendant, had studied at, or received degrees from, any of these institutions.  Based on information received from a representative of the United States Navy, WOLF has never served in the United States Navy.

WHEREFORE, deponent respectfully requests that a warrant be issued for LEONARD WOLF, the defendant, and that he be arrested and imprisoned, or bailed, as the case may be.

ALEXANDER H. KURGANSKY
SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION

Sworn to before me this
10th day of October 2012

THE HONORABLE RONALD L. ELLIS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

5

This fax was received by GFI FaxMaker fax server. For more information, visit: http://www.gfi.com